### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JAMES E. CLAYTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO.  CIV-11-279-F** |
| | ) | |
| **BRAD HENRY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### REPORT AND RECOMMENDATION

Plaintiff, James Clayton, "is an Oklahoma inmate held by the State of Washington

through an interstate agreement with the Oklahoma Department of Corrections." [Doc. No.

20, p. 4, ¶ 5].[1]  On a temporary basis, however, "Plaintiff was incarcerated at Oklahoma State

Penitentiary ("OSP") from February 16, 2010 through April 14, 2010, to attend a court

hearing." *Id.* at ¶ 6.  Appearing *pro se* and *in forma pauperis*, he has now filed a civil rights

complaint pursuant to 42 U.S.C. § 1983 alleging that his constitutional rights were violated

during that period of incarceration at OSP [Doc. No. 1].  The matter has been referred to the

undersigned Magistrate Judge for initial proceedings pursuant to 28 U.S.C. § 636(b)(1)(B)

and (C).

Consistent with *Martinez v. Aaron*, 570 F. 2d 317 (10th Cir. 1978), a Special Report

was filed [Doc. No. 19], and the named Defendants have filed a motion to dismiss or,

---

[1]In his briefing [Doc. Nos. 32 and 41] in opposition to Defendants' summary judgment
motion [Doc. No. 20], Plaintiff does not – with one exception – contest this or any other
statement of undisputed material fact proffered by Defendants.  That exception is with regard
to  Defendants' assertion that Plaintiff has not exhausted his administrative remedies.

alternatively, for summary judgment [Doc. No. 20] to which Plaintiff has responded [Doc.

Nos. 32 and 41].  Following a review of the pertinent filings, the undersigned recommends

that Defendants' motion for summary judgment be granted for the reason that Defendants

have affirmatively established that Plaintiff failed to properly exhaust his administrative

remedies prior to the filing of this lawsuit.[2]

**Plaintiff's Complaint**[3]

Plaintiff complains that he is a minimum security prisoner who was arbitrarily

classified and placed in maximum security at OSP when he was temporarily returned from

the State of Washington to Oklahoma for a court appearance in 2010 [Doc. No. 1, sequential

---

[2]Due to this determination, Defendants' remaining contentions in seeking dismissal and summary judgment are not addressed.  It is noted, however, that Defendants have advanced a jurisdictional claim by asserting entitlement to Eleventh Amendment immunity as to Plaintiff's official capacity claims.  In response, Plaintiff affirmatively states that he is not asking for either monetary damages or injunctive relief against Defendants in their official capacities [Doc. No. 32, p. 30].

[3]After Defendants joined the issues in this case by moving for summary judgment, Plaintiff sought leave to file an amended complaint [Doc. No. 29].  In light of the recommendation to grant summary judgment for failure to exhaust, the undersigned likewise recommends in this report that Plaintiff's motion to amend be denied as moot.  Nonetheless, the undersigned has carefully reviewed Plaintiff's proposed amended complaint for any allegations impacting or pertaining to Plaintiff's attempt to exhaust his administrative remedies and has found none.  Moreover, Plaintiff has voiced no claim in responding to the summary judgment motion that the allegations in his proposed amended complaint would affect the exhaustion issue.  The documents which Plaintiff sought to include with his amended complaint have, however, been considered and discussed in this report as they are the same documents comprising Plaintiff's supplement to the Special Report [Doc. Nos. 30 and 50].

p. 2].[4]  He alleges that "this arbitrary classification and placement was/is in retaliation for

past and present legal activities against named defendants."[5]  *Id.*  He likewise maintains that

"defendants did not follow policy in classifying [Plaintiff] and did not provide any of the

elements of rudimentary due process."  *Id.*

Plaintiff claims that he "was denied access to his attorney, communication and held

incommunicado in the hole on the H-Unit at OSP."  *Id.*  He contends that his attorney "was

not allowed to visit plaintiff without being wanded - a procedure which jeopardizes his life."

*Id.*  He further alleges that he was "denied access to a law library and required to utilize a

'bastardized version of the "paging system"' that require(d) the name and citations of

materials/items desired."  *Id.*  Plaintiff also complains that the "conditions imposed upon him

on H-Unit" subjected him to cruel and unusual punishment.  *Id.*  He seeks monetary relief

in the form of actual and punitive damages as well as declaratory and injunctive relief.  *Id.*

at sequential p. 8.

**Standard of Review**

Summary judgment shall be granted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, the court must view

---

[4]Throughout this report, where Plaintiff has altered the numbering system of a form document or in the case of his supplement to the Special Report, the undersigned has cited to documents by their sequential page number which conforms to the number assigned by this court's electronic case filing system.

[5]Unless otherwise indicated, quotations in this report are reproduced verbatim.

the facts and inferences drawn from the record in the light most favorable to the nonmoving

party. *Burke v. Utah Transit Auth. & Local 382,* 462 F.3d 1253, 1258 (10th Cir. 2006)

(quotation omitted). And, while a *pro se* plaintiff's complaint is liberally construed, a *pro*

*se* plaintiff must adhere to the same rules of procedure which are binding on all litigants.

*Kay v. Bemis,* 500 F.3d 1214, 1218 (10th Cir. 2007). Thus, strict adherence by a *pro se*

plaintiff to the requirements of Fed. R. Civ. P. 56 is required. With respect to those

requirements, the Supreme Court has determined that

> the plain language of Rule 56 . . . mandates the entry of summary judgment,
> after adequate time for discovery and upon motion, against a party who fails
> to make a showing sufficient to establish the existence of an element essential
> to that party's case, and on which that party will bear the burden of proof at
> trial. In such a situation, there can be "no genuine issue as to any material
> fact," since a complete failure of proof concerning an essential element of the
> nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Additionally, when an affirmative defense – such as the failure to exhaust

administrative remedies – is asserted in a motion for summary judgment, Defendants "must

demonstrate that no disputed material fact exists regarding the affirmative defense asserted."

*Hutchinson v. Pfeil,* 105 F.3d 562, 564 (10th Cir. 1997). "If the defendant[s] meet[] this

initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed

material fact." *Id.* "If the plaintiff fails to make such a showing, the affirmative defense bars

his claim, and the defendant[s] [are] then entitled to summary judgment as a matter of law."

*Id.*

**Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act of 1995 ("PLRA") requires that a prisoner exhaust

*all* available administrative remedies before resorting to a § 1983 action in federal court.

Specifically, 42 U.S.C. § 1997e(a) provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id*. In construing this legislation, the United States Supreme Court has determined "that

exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in

court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). A prisoner, such as Plaintiff, successfully

exhausts administrative remedies by completing the administrative review process

established by the prison grievance procedure. *Id.* at 218. "An inmate who begins the

grievance process but does not complete it is barred from pursuing a § 1983 claim under

PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell,* 304 F.3d

1030, 1032 (10th Cir. 2002). "To exhaust administrative remedies an inmate must properly

comply with grievance procedures; substantial compliance is insufficient." *Fields v.*

*Oklahoma State Penitentiary,* 511 F.3d 1109, 1112 (10th Cir. 2007). Courts, however, "are

obligated to ensure that any defects in exhaustion were not procured from the action or

inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir.

2007).

**Arguments and Evidence**

Defendants maintain – and Plaintiff does not argue otherwise – that prior to initiating

this lawsuit Plaintiff was required to exhaust his administrative remedies pursuant to the

Oklahoma Department of Corrections ("DOC") grievance procedure, OP-090124 [Doc. No.

20, pp. 10-12].  *See* Inmate/Offender Grievance Process, OP-090124.  *Id.* at Exhibit 1.  This

process requires an initial, informal attempt to resolve a complaint by talking with the case

manager, supervising employee, or other appropriate staff.  *Id.* at IV.A.  If the matter remains

unresolved, the inmate must then submit a written "Request to Staff," briefly but completely

describing his complaint.  *Id.* at IV.B.1.[6]  Should the informal attempts at resolution fail, the

inmate's next step is submission of an "Offender Grievance Report Form."  *Id.* at V.A.  An

unfavorable response to the grievance may then be appealed to the Administrative Review

Authority or Chief Medical Officer, as appropriate.  *Id.* at VII.  The ultimate ruling of the

Administrative Review Authority or Chief Medical Officer concludes the administrative

process available to an inmate through the Oklahoma Department of Corrections.  *Id.* at

---

[6]Plaintiff maintains he was told by his counselors at OSP that he had to submit grievances to Teri Posvic – the DOC Interstate Corrections Coordinator [Doc. No. 1, sequential p. 4] – because he was not an Oklahoma prisoner [Doc. No. 30, Exhibit I, p. 56, ¶ 17].  In this regard, the grievance process provides that "[a]n Oklahoma offender held in another state or jurisdiction pursuant to an agreement shall submit a copy of any request to staff to the Corrections Compact Unit at the Lexington Assessment and Reception Center (LARC)."  Inmate/Offender Grievance Process, OP-090124 at IV.B.8.  For such individuals, an Offender Grievance Request Form is to be submitted "to the facility head at LARC who will serve as the reviewing authority."  *Id.* at V.B.4.  None of the evidence submitted by either Plaintiff or Defendants suggests that any of Plaintiff's grievance submissions received negative treatment because Plaintiff incorrectly chose to whom and at what facility he made the submission.

VII.D.

In support of their affirmative defense of failure to exhaust, Defendants rely on two affidavits, the first by Terry Crenshaw, the Warden's Assistant at OSP [Doc. No. 20, p. 12; Doc. No. 19, Part 1, Attachment 2, p. 1]. Affiant Crenshaw avers that following a search of the files at OSP, a single grievance dated March 23, 2010,[7] was found. *Id.* Affiant Crenshaw further avers that the grievance was returned by the warden's office to Plaintiff as unanswered because Plaintiff had failed to attach a Request to Staff "reflecting that you have given the Unit Staff or Department Head the opportunity to resolve your complaint." *Id.* The return form delivered to Plaintiff, dated March 23, 2010, provides that "[g]rievances that do not comply with OP-090124 will be returned unanswered, and you have ten (10) calendar days from the date of receipt to properly submit the grievance." *Id.* at p. 4; Doc. No. 30, Exhibit H, sequential. p. 53.[8]

The second affidavit submitted by Defendants is by Kerry Minyard, an officer with the Administrative Review Unit of the DOC [Doc. No. 19, Part 1, Attachment 2, p. 2].

---

[7]As the evidence submitted by both Plaintiff and Defendants shows, the "Offender Grievance Report Form" was sent by Plaintiff to OSP Warden Workman on March 17, 2010, and was file stamped as received in the warden's office on March 23, 2010 [Doc. No. 19, Part 1, Attachment 2, p. 5; Doc. No. 30, Exhibit H, sequential. p. 54].

[8]The DOC grievance policy provides that a copy of the Request to Staff must be attached to the grievance form. *See* Inmate/Offender Grievance Process, OP-090124 at V.A. [Doc. No. 20, Exhibit 1]. The grievance procedure further provides that "[i]f the offender does not follow instructions as explained in this procedure and on the grievance forms, the grievance may be returned for proper completion. If allowed, the offender must properly re-submit the grievance within ten calendar days of receipt." *See* Inmate/Offender Grievance Process, OP-090124 at V.A.7. [Doc. No. 20, Exhibit 1].

Affiant Minyard states "[t]hat in that position I have access to the offender grievance records maintained in Administrative Review" and "[t]hat I reviewed documentation regarding offender James Clayton # 73937.  Offender James Clayton has not filed any grievance or grievance appeals with this office from the dates of Feb 2010 - April 2011." *Id.*

These affidavits establish that a records search revealed that Plaintiff filed one offender grievance report directed to the OSP Warden and that he did not file any offender grievance report or grievance appeal with the DOC during the period from February, 2010 to April, 2011. Thus, by establishing that Plaintiff did not complete the administrative review process – that is, either by obtaining relief or by appealing any negative determination to the Administrative Review Authority – Defendants have met their initial burden of demonstrating that no disputed material fact exists regarding their affirmative defense of failure to exhaust.

Accordingly, Plaintiff must now "demonstrate with specificity the existence of a disputed material fact." *Hutchinson,* 105 F.3d at 564.  The undersigned's review of the filings in this action discloses the following allegations advanced, and evidence submitted, by Plaintiff in this regard.  Plaintiff first spoke to administrative exhaustion in his verified complaint:

> Previously tried to exhaust grievance process. Grievances given to staff members but no response/s ever received.  Attorney wrote letters as did I.
>
> Grievance process fails to provide an avenue by which complaints and grievances can be investigated and relief granted to prisoners.  The process is inadequate to protect the rights of prisoners and fails to provide a remedy for violations of prisoners rights.

> A belated attempt has been sought.  Previously grievances have not been responded to and relief has not been afforded.

[Doc. No. 1, sequential p. 8].  In this regard, Plaintiff attaches two offender grievance report forms dated December 5, 2010 – some eight months after his return to Washington – to his complaint.

After Defendants moved for summary judgment, Plaintiff responded by seeking to amend his complaint and to supplement the Special Report.[9]  Included within the supplemental documents is an affidavit by Plaintiff, dated January 7, 2012 [Doc. No. 30, Exhibit I, sequential pp. 43 - 63].  That affidavit provides as follows with regard to his exhaustion efforts:

> 17.  I further submit that I did seek to utilize the grievance process at OSP in February, March and April, 2010.  I submitted Requests to Staff which is the first step in the grievance process.  This step was not responded to by anyone at OSP or ODOC.  I also submitted Requests to Staff to Teri Posvic and other ODOC staff regarding my classification, the conditions of confinement, hampering, impeding and denying me access to attorneys and courts, associate and other protected constitutional rights.  I believed then and now that the grievance process and procedure at OSP and ODOC are not available to me.  I was also told by Counselor Apala and Brown that I had to submit grievances to Teri Posvic at Lexington since I was not an Oklahoma prisoners.  I have tried submitting grievances to James Vanlandingham, Teri Posvic and others at Lexington, Oklahoma, to no avail.  I also complained about defendants inadequate training, supervision, instruction and disciplining of subordinates.  None of my grievances have been answered.  I do not feel or believe that the Grievance Process in Oklahoma is available to me.

*Id.* at sequential p. 56, ¶ 17.  In a subsequent paragraph of the affidavit, Plaintiff provided

---

[9]Plaintiff stated that Defendants had "no objection to the filing of supplemental materials," [Doc. No. 30, p. 1], and this motion has been granted [Doc. No. 50].

another version of his discovery efforts:

> 25. I attempted to file grievances at OSP and was denied access to the grievance process. First, I submitted "Requests to Staff" to the counselors Apala and Brown. Neither responded to my Requests to Staff. I requested grievances from staff. I was told to get the grievance forms from my counselor. The counselors told me I had to file Requests to Staff to obtain a grievance form. ["Catch 22"].[10] I did manage get one grievance form from another prisoner and submitted it. I was not allowed to file grievances by OSP staff and counselors. I did not see "any" Supervisor Staff while at OSP. I believe and feel that the grievance process in Oklahoma and at OSP was not "available" to me. Secondly, I was told by Counselors Apala and Brown "if I had grievances" that "I needed to address them to Lexington" as I was an Interstate prisoner[?]. If I am not allowed grievance forms and if the counselors will not respond to Requests to Staff then the process is not "available" to me of if it is I simply do not know how to use it. I did not know what else to do. Finally, after I left Oklahoma and was returned to Washington State I sent grievances to Teri Posvic and Tracy Jones. None of the grievances were answered. Tracy Jones said the grievance was returned to me. I never received the grievance. I can not use something that is not available to me.

*Id.* at sequential pp. 60 - 61, ¶ 25.

---

[10] As to Plaintiff's claim that he was not allowed grievance forms, it is worth noting that he explains by affidavit that he was not permitted access to the library at OSP, [Doc. No. 30, Exhibit I, sequential p. 47], but was, instead, required "to fill out a form[.]" *Id.* at sequential p. 49. Included in the exhibits to his supplement to the Special Report – incorporated in his affidavit, *id.* at sequential p. 56 – is Exhibit F, a blank Request for Legal Material form [Doc. No. 30, Exhibit F, sequential p. 12]. Likewise, Exhibit L to Plaintiff's supplement to the Special Report is a copy of the DOC access to courts and library policy [Doc. No. 30, Exhibit L]. A review of that policy reveals that both requests to staff and offender grievance report forms are among the forms required to be kept in Oklahoma prison law libraries [Doc. No. 30, Exhibit L, sequential p. 19]. Defendants' Special Report contains copies of these request forms submitted by Plaintiff beginning on February 17, 2010, shortly after his arrival at OSP, and ending on April 13, 2010, the day before he returned to Washington [Doc. No. 19, Part 1, Attachment 3B]. On February 17, 2010, Plaintiff's request for four grievances and five requests to staff was approved, *id.* at p. 1, as was his March 22, 2010, request for five more grievances and five more requests to staff. *Id.* at 11.

Several weeks after submitting the foregoing affidavit, Plaintiff filed his sworn

response to Defendants' summary judgment motion [Doc. No. 32]. There, Plaintiff makes

the following claims with regard to his exhaustion process:

> Likewise, defendants SR claims plaintiff submitted only one grievance.
> Defendants fail to note plaintiff was held in almost virtual incommunicado
> status at OSP on H-Unit. SSP, Exhibit H: 1 - 5; and I: 4, ¶ 17 [Affidavit].
> Plaintiff submitted "many" Requests to Staff (RTS) to counselors Apala and
> Brown; but, none of the RTS were responded to by either counselor or any
> other person. Plaintiff was also told his RTS and Grievances would be sent to
> Lexington Interstate. See SSP, Exhibit I: 4, ¶ 17, 25.

> The first step in the Grievance Process, submitting the RTS to attach to
> the grievance was not - and never has been - more than a perfunctory process -
> "unavailable" to plaintiff Clayton. See SSP, Exhibits C: 1-4; and I: 4, ¶ 17.
> All attempts to utilize RTS and grievance process, in Oklahoma, have been
> acts of futility. SSP, Exhibit I: 4, ¶ 17; Exhibit H: 1-5. Plaintiff's position is
> that the Grievance Process is and has been "unavailable" to him in Oklahoma.

[Doc. No. 32, p. 5]. Plaintiff further stated in response to the summary judgment motion that

> Plaintiff submitted many RTS to Counselors Apala and Brown on H-
> Unit during the period of his confinement. None of the RTS were answered
> or responded to by anyone. SSP, Exhibit I: 4, ¶ 17 and 25; cf., SSP Exhibit H:
> 1-5. Plaintiff submits the grievance process was not, and is not, available to
> him in Oklahoma. See, page five, above.

*Id.* at 27.

A review of the documents referenced by Plaintiff in his responsive brief shows,

contrary to his statement, *id.* at 5, nothing that appears grievance-related in Exhibit C [Doc.

No. 30, Exhibit C]. The documents attached in Exhibit H, Appendices 1 - 5, consist of a

November, 2010 letter written by Plaintiff to the DOC Corrections Compact Officers

purporting to enclose a copy of what Plaintiff terms a "grievance" that he submitted during

his confinement at OSP [Doc. No. 30, Exhibit H, sequential p. 47].  What Plaintiff terms a

grievance is actually a request to staff dated March 31, 2010, and is directed to Teri Posvic,

Interstate Coordinator, Lexington A & R, complaining about his security classification and

alleged retaliation.  *Id.* at sequential pp. 49 - 51.  Plaintiff's Appendix 3 contains documents

pertaining to the March 23, 2010, offender grievance report which was previously discussed

in connection with the OSP records search and affidavit of Terry Crenshaw; another copy of

the March 31, 2010, request to staff to Teri Posvic; an April 1, 2010, request to staff

submitted by Plaintiff while at OSP regarding his trust fund account; a May 10, 2010, letter

written by Plaintiff to Teri Posvic asking what could be done to deal with his classification

issues should he need to return to Oklahoma; a September, *2008*, letter by Plaintiff regarding

earned credits; and, January 3 and January 7, 2010, letters written by Plaintiff with regard to

his upcoming return to Oklahoma.  *Id.* at sequential pp. 53 - 67.  Appendix 4 is a May, 2011,

letter advising Plaintiff of the denial of a tort claim.  *Id.* at sequential p. 69. Appendix 5

contains an undated letter to Plaintiff from the Interstate Compact Coordinator for Oklahoma

with regard to requested credits for completion of college classes and a grievance which

Plaintiff had asserted had not been answered and another undated letter from the same

coordinator advising Plaintiff that with regard to placement should he return to Oklahoma

that "[y]ou claim to be at a minimum security facility there in Washington, but I have asked

DOC Staff there in Washington about this and have been informed you are considered

minimum security but you are still behind a secure fence."  *Id.* at sequential pp. 71 - 72.  The

final document in Appendix 5 is Plaintiff's July, 2011, letter – written some four months after

this lawsuit was filed – to the coordinator stating, with regard to a "grievance" which

Plaintiff had asserted had not been answered that

> you mentioned that you returned my grievance and explained why. I
> have never received your response or the grievance and had any grievances
> "answered" by anyone regarding the issues which I have submitted to
> Oklahoma Corrections staff. As far as I am concerned I do not have an
> Administrative Remedy to exhaust as I never get a response to a grievance
> from Oklahoma. What good is a grievance if no one responds to the
> grievances?

*Id.* at sequential p. 73.

Plaintiff subsequently filed what he termed as Plaintiff's Response to Defendants'

Reply to Plaintiff's Response to Defendants' Motion to Dismiss/Motion for Summary

Judgment [Doc. No. 41]. With regard to exhaustion, Plaintiff argues that

> [t]he Courts have not hesitated to find that if you don't get a response
> to your initial grievance, you have exhausted the grievance process. . . . In this
> case, the initial step in the grievance process – the filing of a Request to Staff
> (RTS) is <u>still pending</u> as no response has ever been received.

*Id.* at 3.

The last filing by Plaintiff with any reference to his exhaustion efforts is an affidavit

he sought to file through an April, 2012, motion [Doc. No. 49]. Defendants did not object

to Plaintiff's motion, and it has been granted by separate order [Doc. No. 51]. Plaintiff's

affidavit makes the following representations regarding his exhaustion efforts:

> 3. Contrary to the SR, page 2, lines 3-9, I did submit "many" (more
> than a dozen, at least) Request to Staff (RTS) to both Counselors Apala and
> Brown on H-Unit at OSP. As set out in my prior Affidavit, Supplemental
> Special Report (herein cited SSR), Exhibit I: 4, ¶'s 17 and 25. As stated in my
> prior affidavit I did not receive a response to my RTS's from counselors Apala
> and/or Brown in 2010. I was also told by counselors Apala and Brown my

requests would be sent to Lexington because I was an out of state prisoner. I submitted RTS's between February 14, 2010 and April 14, 2010, to counselors Apala and/or Brown while confined on Super-Max (herein cited H-Unit). Subsequent to my return to Washington State I submitted requests to Teri Posvic, Lexington Interstate Compact Office, and received no responses.

[Doc. No. 49, Affidavit, p. 1, ¶ 3]. In addition, Plaintiff avers that he "submit[ted] RTS's to counselor's Apala and Brown and later Teri Posvic in 2010. Plaintiff received no responses to his RTS from anyone. The grievance process was not available to plaintiff in 2010 as he could not attach or show he had submitted RTS since he was never given a receipt." *Id.* at p. 4, ¶ 11. Finally, Plaintiff attests that

> 20. Terry Crenshaw and Kerry Minyard state they have checked records. SR, pages 16-17. They do not say plaintiff did not submit RTS's to counselor's Apala, Brown and Teri Posvic which is the "informal step" required to file a grievance. Defendants have submitted no evidence plaintiff did not submit request to staff (RTS) to the proper staff member and the defendants have not shown the Requests to Staff are not made in triplicate forms. If the RTS is not returned to plaintiff the grievance process is not "available" as is shown by Grievance No. 10-040. SR, pages 16-20. Plaintiff submits and avers RTS's were submitted as stated herein. No responses to RTS was received regarding the issues.

*Id.* at p. 8, ¶ 20.

**Analysis**

Plaintiff's responses fail to create a genuine issue of material fact with regard to Defendants' evidence that he did not properly exhaust his administrative remedies prior to initiating this proceeding. Defendants have submitted evidence establishing that the *only* offender grievance report Plaintiff submitted during his incarceration at OSP was returned to him because he did not attach a copy of the requisite request to staff form. In addition,

14

Defendants' evidence demonstrates that Plaintiff did not file any offender grievance report or grievance appeal with the DOC during the period from February, 2010 to April, 2011. Accordingly, Defendants have provided proof that Plaintiff began the grievance process but did not properly complete it by pursuing his administrative remedies through the conclusion of the process.

In response, Plaintiff makes reference to and submits copies of various offender grievance reports,[11] but makes no claim that he submitted them either while at OSP or to the DOC in any timely manner after he was returned to the State of Washington. As to the only offender grievance report form found in Defendants' records search – the March 17, 2010, filing in which Plaintiff complains of denial of access to his attorney [Doc. No. 30, Exhibit H, sequential p. 54] – Plaintiff attempts to create a factual issue by stating that "Defendants have submitted no evidence plaintiff did not submit request to staff (RTS) to the proper staff member" and "[i]f the RTS is not returned to plaintiff the grievance process is not 'available' as is shown by Grievance No. 10-040.  SR, pages 16-20." [Doc. No. 49, Affidavit, p. 8, ¶ 20].

Plaintiff himself has provided the evidence he claims the Defendants have not.  In Grievance No. 10-040, when asked to explain the "[i]nformal action taken (including dates) to resolve the complaint, as well as the names of those employees from whom you sought an answer to your grievance," Plaintiff stated as follows:

---

[11]Plaintiff does not maintain that he was unable to obtain Oklahoma offender grievance report forms after he was returned to Washington State in mid-April, 2010.

> I spoke with the counselor. *I have not sent a request to staff* as those are not responded to and only consume unnecessary time. They fail (requests to staff) to provide a process to resolve issues and are inadequate to protect the rights of myself. A request to staff was sent to insure the phone numbers were correct <u>but</u> as normal, no response has been received.

[Doc. No. 19, Part 1, Attachment 2, p. 5, Doc. No. 30, Exhibit H, sequential p. 54 (emphasis added)]. Thus, Plaintiff's own words belie his claim that the administrative process was unavailable to him; he simply chose not to follow it.

With respect to the two requests to staff forms submitted by Plaintiff in opposition to the summary judgment motion, the first is the request to staff which Plaintiff maintains he sent to Teri Posvic at the Corrections Compact Unit on March 31, 2010 [Doc. No. 30, Exhibit H, sequential p. 49]. While Plaintiff claims that he did not receive a response to this request to staff, he does not contend that upon his return to the State of Washington he followed the express provisions of the grievance process with regard to an unanswered request to staff.[12] Neither does he maintain that he was in any manner impeded from doing so. The second request to staff submitted with Plaintiff's evidence is one to which Plaintiff – contrary to his claims that this never occurred – received a response. *Id.* at p. 57.

Apart from this documentary evidence, Plaintiff's only remaining response to

---

[12]As to requests to staff,

> [i]f there has been no response in 30 calendar days of submission, the offender may file a grievance the reviewing authority with evidence of submitting the "Request to Staff" to the proper staff member. The grievance may <u>assert only</u> the issue of the lack of response to the request to staff.

Inmate/Offender Grievance Process, OP-090124 at IV.B.7. [Doc. No. 20, Exhibit 1].

Defendants' evidence is through vague and conclusory sworn statements that the grievance system was unavailable to him because he never received responses to his many requests to staff.  Nonetheless, Plaintiff provides no facts detailing his purported exhaustion efforts.  He maintains that he submitted many requests to staff to his counselors but fails to provide specifics such as dates and of whose conduct he was complaining and, most significantly, fails to detail what relief he was seeking in these many requests and whether the requested relief even involved the matters raised in his complaint or was, instead, directed to another aspect of prison life.  "Such conclusory and self-serving statements, even if presented in an affidavit, are insufficient to create a genuine issue of fact to survive summary judgment." *Thomas v. U.S. Bureau of Prisons,* 282 Fed. Appx. 701, 704 (10th Cir. 2008) (citing *BancOklahoma Mortgage Corp. v. Capital Title Co.,* 194 F.3d. 1089, 1101 (10th Cir. 1999) (concluding that an affidavit can establish a fact for purposes of summary judgment but that such an affidavit must contain facts and not conclusions)).  *See also White v. Mullins,* No. 11-7030, 2012 WL 1764648 (10th Cir. May 18, 2012) (unpublished op.) (finding that the inmate's conclusory affidavit failed to suggest that what he filed was sufficient to exhaust his administrative remedies).

It is undisputed that Plaintiff initiated the grievance procedure but failed to properly file a proper offender grievance report. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan,* 304 F.3d at 1032.  The undersigned finds that Defendants have affirmatively established that Plaintiff failed to exhaust his

administrative remedies prior to initiating this § 1983 action and, consequently,  Defendants

are entitled to summary judgment as a matter of law.

### <u>RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT</u>

For the reasons set forth above, it is the recommendation of the undersigned

Magistrate Judge that Defendants' motion for summary judgment [Doc. No. 20] be granted.

In addition, if this recommendation is adopted, it is recommended that Plaintiff's motion to

amend his complaint [Doc. No. 29] be denied as moot; that Defendants' motion to strike

[Doc. No. 32] Plaintiff's amended complaint be denied as moot; and, that both pending

motions pertaining to discovery – neither of which implicate exhaustion issues –  be denied

as moot [Doc. Nos. 34 and 40].

The parties are advised of their right to file an objection to the Report and

Recommendation with the Clerk of this Court by the 18th day of July, 2012, in accordance

with 28 U.S.C. § 636 and Local Civil Rule 72.1.  The parties are further advised that failure

to make timely objection to the Report and Recommendation waives the right to appellate

review of both factual and legal questions contained herein.  *Moore v. United States*, 950

F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned

Magistrate Judge in the present case.

IT IS SO ORDERED this 28th day of June, 2012.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE